IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE, AT NASHVILLE

|  |  |
|---|---|
| STEPHEN W. THOMAS<br><br>Plaintiff,<br><br>v.<br><br>BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC<br><br>Defendant. | Case No. _____<br><br>JURY DEMAND |

# COMPLAINT

Comes now the Plaintiff Stephen W. Thomas, by and through undersigned counsel, and alleges as follows:

## PARTIES

**1.** Plaintiff Stephen W. Thomas is a citizen and resident of Davidson County, Tennessee.

**2.** Defendant Bridgestone is a Limited Liability Company under the laws of Delaware, having its principal place of business in Nashville, Tennessee. Its registered agent is NATIONAL REGISTERED AGENTS, INC., 800 S. Gay St., Suite 2021, Knoxville, TN 37929-9710.

## JURISDICTION AND VENUE

**3.** Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§1331, 1337, and 1345. This action is authorized and instituted pursuant the Americans with Disabilities

1

Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C.A. § 12101 *et seq* and 42 U.S.C.A. § 2000e-5.

4. The unlawful employment practices alleged below were and are now being committed within the jurisdiction of the United States District Court for the Middle District of Tennessee.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under the ADAA, 42 U.S.C.A. §§ 12111(5), 12111(7).

6. Venue is proper under 28 U.S.C. § 1391.

7. Plaintiff timely filed a discrimination charge against Defendant with the Equal Employment Opportunity Commission (EEOC). Plaintiff received a notice of his right to sue from the EEOC within 90 days of the filing of this complaint. A copy of the notice is attached as Exhibit 1. The Notice of Right to Sue is incorporated by reference. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTS AND CLAIMS

8. At all relevant times, Defendant, (hereinafter "Bridgestone") has continuously been a Limited Liability Company doing business in the State of Tennessee and the County of Davidson, and has continuously employed at least 500 employees year-round.

9. Mr. Thomas spent most of the last eighteen (18) years of his life as a dedicated employee of Bridgestone. For approximately twelve (12) of those years, he performed the job of tire builder at Bridgestone's La Vergne, TN, tire factory.

**10.** On January 28, 2013, during the course and within the scope of his employment as a tire builder, Mr. Thomas's left arm was trapped and crushed by the machine he operated. He suffered severe injuries, resulting in pain, neuropathy, and permanent impairment. He has a permanent medical restriction on lifting more than twenty-five (25) pounds, but Mr. Thomas is also unable to lift lighter weights without significant pain. When gripping anything for more than a few moments, such as a steering wheel, his arm becomes numb and loses strength. Combined, these conditions render the use of his left arm permanently impaired.

**11.** Mr. Thomas's major life activities of driving, lifting, and working are substantially limited. Mr. Thomas is disabled within the meaning of the ADA. Moreover, Bridgestone regarded Mr. Thomas as disabled.

**12.** While Mr. Thomas could no longer perform the job of tire builder after the injury, he was placed on other necessary jobs at the factory, all essential functions of which he performed capably without accommodation. Thus, Mr. Thomas is a "qualified individual" within the meaning of the ADAA.

**13.** Immediately following the injury, Mr. Thomas was reassigned to other jobs. From January 29, 2013, until March 25, 2014, Mr. Thomas performed various jobs at the plant, including clock card supervisor and trainer. During this time, Bridgestone was informed of the status of Mr. Thomas's medical condition.

**14.** On every job he was assigned, Mr. Thomas performed exceptionally well. As clock card supervisor, Mr. Thomas handled a daily list of administrative tasks, and

inspected the facilities for compliance with safety guidelines. Every crew in the factory has a clock card supervisor, and this job still exists at Bridgestone today.

15. On or about February 28, 2014, Mr. Thomas applied for the SDP ("Standard Driven Process") job at the Bridgestone factory – a job he could perform within his restrictions – as a reasonable accommodation. He was told by Anthony Bratcher, the person that would be training whoever received the job, that "[Mr. Thomas] is well qualified due to [his] years of experience" and that "[Mr. Bratcher] would have no problem training [Mr. Thomas] for that job."

16. Bridgestone denied Mr. Thomas's request for reasonable accommodation.

17. Bridgestone gave the SDP job to a less qualified, non-disabled employee, who had not engaged in an ADA protected activity.

18. Rather than engaging in the mandatory good-faith interactive process designed to identify reasonable accommodations and/or seeking any clarification whatsoever from his physician, Bridgestone discharged Mr. Thomas on March 25, 2014. On this date, he received a document titled "SEPARATION NOTICE" that states as follows:

> "Mr. Thomas sustained a workplace injury on 01/28/2013 and reached maximum medical improvement on 11/18/2013. Upon reaching maximum medical improvement, Mr. Thomas was issued permanent restrictions. There are no jobs in the plant that someone with the restrictions assigned to Mr. Thomas can perform."

19. The fact that Mr. Thomas had been competently performing jobs in the factory *before* he reached his maximum medical improvement, and the fact that Bridgestone gave a job for which Mr. Thomas was well qualified to a less-qualified, non-

disabled individual, demonstrate intentional discrimination against Mr. Thomas on the basis of disability.

20. Furthermore, Mr. Thomas was issued the separation notice less than one month after applying for the SDP job as a reasonable accommodation. He was taken off the floor, while performing his job, to be told that there was no job in the plant he was capable of performing. The fact that this happened so shortly after his good-faith request for accommodation demonstrates Bridgestone terminated him in retaliation for the request, in violation of the ADAA.

21. After the separation notice was issued, in a meeting between management and union representatives and employees, manager Caitlyn Benner stated in unequivocal terms that Mr. Thomas's impairment was the reason for his termination. This demonstrates direct evidence of intentional discrimination on the basis of disability, in violation of the ADAA. No reasonable jury could conclude otherwise.

22. Bridgestone's "SEPARATION NOTICE" lists Mr. Thomas's impairment as the reason for his termination and discharged him on a demonstrably false pretext, in violation of the ADAA. No reasonable jury could conclude otherwise.

23. After Mr. Thomas filed his charge with the EEOC, Bridgestone refused to participate in the administrative process. No reason was given for Mr. Thomas's termination beyond that laid out in the separation notice. Defendant cannot prove by a preponderance of the evidence that there was no work available for a person with Mr. Thomas's disability, because he was competently performing necessary work the day Caitlyn Benner served him with the separation notice. Furthermore, the SDP job that was

5

given to a less-qualified, non-disabled individual was a job that Mr. Thomas could competently perform.

24. Defendant discriminated against Mr. Thomas and retaliated against him in violation of the ADAA.

25. In engaging in the conduct described in this complaint, Defendant acted intentionally with malice or, at the very least, acted with reckless indifference to Mr. Thomas's federally protected rights. Consequently, Bridgestone is liable for punitive damages.

26. As a result of the conduct described in this complaint, Mr. Thomas has lost income and other privileges and benefits of employment and incurred expenses he otherwise would not have; suffered embarrassment, humiliation, emotional distress and mental anguish, undue stress and anxiety, inconvenience, and loss of enjoyment of life; and incurred attorneys' fees, costs and litigation expenses.

**PRAYER FOR RELIEF**

WHEREFORE, premises considered, Mr. Thomas prays for:

1. A jury trial;

2. Back pay and benefits;

3. Reinstatement or, alternatively, front pay and benefits;

4. Compensatory damages;

5. Punitive damages;

**6.** Attorneys' fees, costs and expenses;

**7.** Prejudgment interest and, if applicable, post-judgment interest; and

**8.** Such other and further legal or equitable relief to which he may be entitled.

        Respectfully submitted,

        _____
Wesley Clark #32611
109 Jefferson St.
Smyrna, TN 37167
Phone: 615-984-4681
Fax: 611-514-9674
wesley@wesleyclarklaw.com